UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

BARRY LONG

Plaintiff,

v.

ROOSEVELT SQUARE REGENCY, LLC,

Defendant.

Case No.

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF UNDER THE AMERICANS WITH DISABILITIES ACT AND WASHINGTON LAW AGAINST DISCRIMINATION**

## I.   INTRODUCTION

1.1   Plaintiff Barry Long is an individual with a disability. He uses a manual wheelchair for mobility and drives an accessible vehicle for transportation. He requires a designated accessible parking space to ensure that he can enter and exit properties as safely as someone without a disability. One of these properties is Roosevelt Square, owned by Defendant Roosevelt Square Regency, LLC ("RSR"), an owner of a place of public accommodation under the Americans with Disabilities Act ("ADA").

1.2   The ADA obligates privately-owned places of public accommodation to provide designated accessible parking spaces that fully comply with technical guidelines consistent with

Title III of the ADA and its implementing regulation at 28 C.F.R. § 36.304(b)(18). These guidelines include the 2010 ADA Standards for Accessible Design ("2010 Standards") and its predecessor, the 1991 ADA Standards for Accessible Design ("1991 Standards").

1.3   These requirements have existed for over thirty-five years. They apply to RSR as an owner or operator of a place of public accommodation. Yet, Mr. Long just recently experienced these barriers in a parking facility owned by RSR.

1.4   The ADA aims to eliminate longstanding discrimination against people with disabilities.[1] This goal includes implementing technical requirements to eliminate access barriers that prevent people with disabilities from the full and equal benefits of the goods, services, or other benefits provided by places of public accommodation.[2]

1.5   Because Roosevelt Square does not comply with the ADA's mandates for places of public accommodation, Mr. Long experienced discrimination based on disability in violation of the ADA and the Washington Law Against Discrimination (WLAD). Mr. Long brings this action against RSR for violations of these laws.

## II.   JURISDICTION AND VENUE

2.1   This action arises under the laws of the United States and is brought pursuant to 28 U.S.C. § 12132. Jurisdiction is conferred upon this court under federal question jurisdiction pursuant to 28 U.S.C. § 1331 and civil rights jurisdiction under 28 U.S.C. § 1343(a)(3)-(4).

---

[1] See 42 U.S.C. § 12101(b)(1) (purposing the ADA "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities").
[2] See 42 U.S.C. § 12101(b)(2) (intending the ADA "to [also] provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities").

2.2     The court also has supplemental jurisdiction over Mr. Long's state law claims arising under Washington's Law Against Discrimination, RCW 49.60, pursuant to 28 U.S.C. § 1367.

2.3     Venue in this court is proper pursuant to 28 U.S.C. § 1391(b)(2), as all events giving rise to the claims occurred in King County, Washington.

### III.     PARTIES

3.1     Barry Long is the Plaintiff in this action. At all times relevant to this action, Mr. Long has been a resident of King County, Washington, a county located in this judicial district.

3.2     Mr. Long is a qualified individual with a disability as defined by Title III of the ADA and WLAD, RCW 49.60.010 *et seq.*

3.3     Mr. Long is "substantially limited" in his ability to walk and other "major life activities" included in the ADA.[3] He is an individual with a disability under the ADA. Thus, the ADA protects Mr. Long, and other similarly situated individuals, from discrimination based on disability.

3.4     Mr. Long uses a wheelchair for mobility and drives a modified vehicle for transportation. He requires van accessible parking with an accessible route to safely and comfortably patronize places of public accommodation.[4] One such place of public accommodation is Roosevelt Square, owned by RSR, the Defendant in this action.[5]

---

[3] 42 U.S.C. § 12102(2)(A). Major life activities also include major bodily functions. *Id.* § 12102(2)(B).
[4] Particularly, Mr. Long requires parking in designated accessible parking spaces that fully comply with the 2010 or 1991 Standards of Accessible Design.
[5] This information is derived from the entry associated with the parcel number denoted in this Complaint. See Property Detail, King Cnty. Dept. Assessments, https://blue.kingcounty.com/Assessor/eRealProperty/Detail.aspx?ParcelNbr=1797500715 (last visited Aug. 12, 2025).

Complaint for Declaratory and Injunctive
Relief - 3

WASHINGTON CIVIL & DISABILITY ADVOCATE
4115 Roosevelt Way NE, Suite B
Seattle, WA 98105
(206) 428-3172

3.5     Defendant, RSR owns or operates Roosevelt Square at or around the address of 6410 Roosevelt Way NE, Seattle, WA 98115 (the "Property"). Publicly available records show Roosevelt Square, including the entire parking facility, encompasses parcel #1797500715 in King County of Washington state.

## IV.     FACTS

4.1     Mr. Long incorporates by reference the prior paragraphs herein.

**Background – The Americans with Disabilities Act (ADA) and Applicable Laws to Ensure Full and Equal Access for Individuals with Disabilities**

4.2     The ADA asserts that no one with a disability "shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation."[6]

4.3     Congress enacted the ADA in 1990, after Congress found that individuals with disabilities have historically faced discrimination in society.[7] Congress statutorily declared this form of discrimination as a "serious and pervasive social problem."[8]

4.4     Congress also acknowledged explicitly that discrimination has "persist[ed]" in "critical areas," such as places of public accommodation.[9] "Places of public accommodation include shopping centers."[10]

4.5     Further, Congress addressed "the discriminatory effects of architectural . . . barriers . . . [and] failure to make modifications to existing facilities," among other factors that contribute to the ongoing exclusion of people with disabilities.[11]

---

[6] 42 U.S.C. § 12182(a).
[7] 42 U.S.C. § 12101(a)(2).
[8] Id.
[9] 42 U.S.C. § 12101(a)(3).
[10] 42 U.S.C. § 12181(7)(E).
[11] 42 U.S.C. § 12101(a)(5).

4.6     Architectural barriers that deny people with disabilities from "participat[ing] in or benefit[ing] from the goods, services, facilities, privileges, advantages, or accommodations of an entity" are discriminatory.[12]

4.7     Accordingly, Congress sought to "clear[ly] and comprehensive[ly]" eradicate discrimination against people with disabilities, such as "provid[ing] clear, strong, consistent, [and] enforceable standards" to eliminate this kind of discrimination.[13]

4.8     One of these standards is the ADA's Standards for Accessible Design. Two versions of the Standards for Accessible Design exist: the 1991 Standards for Accessible Design ("1991 Standards") and the 2010 Standards for Accessible Design ("2010 Standards").[14]

4.9     The table below provides information on what standard applies, based on the date an owner, operator, or lessor of a place of public accommodation began alterations.[15]

| Latest Starting Date of Alterations[16] | Applicable Standard |
| --- | --- |
| Before January 26, 1992 | Readily Achievable (i.e., easily accomplishable without much difficulty or expense)[17] to meet the 1991 Standards |
| January 26, 1992, through March 14, 2010 | 1991 Standards |
| March 15, 2010, through March 14, 2012 | Either the 1991 or 2010 Standards |

---

[12] 42 U.S.C. § 12182(b)(1)(A)(i).
[13] 42 U.S.C. § 12101(b)(1)–(2).
[14] U.S. Dept. Just., 2010 ADA Standards of Accessible Design (Sept. 15, 2010), https://www.ada.gov/assets/pdfs/2010-design-standards.pdf (last visited Apr. 4, 2025);
[15] U.S. Dept. Just., 2010 ADA Standards of Accessible Design 15 (Sept. 15, 2010), https://www.ada.gov/assets/pdfs/2010-design-standards.pdf (last visited Apr. 4, 2025).
[16] The applicable standard is also guided by the date when an owner or operator of a place of public accommodation last completed an application for a building permit or permit extension and received certification of completion by a local government, or that the local government receives the completed permit and does not certify the completed application. See id.
[17] ADA Technical Assistance Manual § III-4.4200, https://archive.ada.gov/taman3.htm#III-4.4200 (last visited Apr. 4, 2025).

Complaint for Declaratory and Injunctive
Relief - 5

WASHINGTON CIVIL & DISABILITY ADVOCATE
4115 Roosevelt Way NE, Suite B
Seattle, WA 98105
(206) 428-3172

| March 15, 2012, and later | 2010 Standards |
|---|---|

4.10    As an owner or operator of a place of public accommodation, RSR is responsible for guaranteeing full compliance with the applicable Standards at Roosevelt Square. However, RSR has failed to uphold this obligation. The next sections document how RSR discriminated against Mr. Long by failing to remove access barriers that impacted Mr. Long's visit to Roosevelt Square.

**RSR's Property**

4.11    On information and belief, RSR obtained permits to begin construction on Roosevelt Square, including its parking facility, in 1999.[18] However, the actual date RSR last completed alterations is unknown. This Complaint alleges violations related to both the 2010 and 1991 Standards.

4.12    At all times relevant to this action and currently, the Property has included parking spaces comprising a separate outdoor parking space and a parking garage that consists of separate underground and upper level sections.

4.13    This Complaint discusses the accessibility barriers that violate the applicable Standards for Accessible Design and their implementing regulations.

**Accessibility Violations in the Underground Level of the Parking Garage**

4.14    One of the parking facilities owned or operated by RSR is an indoor parking garage.

---

[18] Property Detail, King Cnty. Dept. Assessments, https://blue.kingcounty.com/Assessor/eRealProperty/Detail.aspx?ParcelNbr=1797500715 (last visited Aug. 12, 2025). The information regarding new construction of Roosevelt Square is located under the "Permit History" section of the Property Detail page.

4.15 On information and belief, the underground level of the parking garage contains approximately 139 total parking spaces and is detached from the upper level of the garage.

4.16 On information and belief, the underground level of the parking garage contains a total of four designated accessible parking spaces, separated into two different pairs, with one of these four accessible parking spaces designated as the "Van Accessible" space.

4.17 One of these two pairs of accessible parking spaces is depicted in the photo below.



4.18 Under the 2010 Standards, each designated accessible parking space must have a posted sign at least sixty inches between the ground and bottom edge of the sign.[19] Under the 1991 Standards, these posted signs must be tall enough to avoid being blocked by a parked vehicle in the designated accessible parking space.[20]

---

[19] U.S. Dept. of Just., 2010 ADA Standards for Accessible Design § 502.6 (Sept. 15, 2010), https://archive.ada.gov/regs2010/2010ADAStandards/2010ADAStandards.pdf.
[20] U.S. Dept. of Just., Excerpt from 28 CFR Part 36: ADA Standards for Accessible Design § 4.6.4 (last updated July 1, 1994), https://www.ada.gov/assets/pdfs/1991-design-standards.pdf.

4.19    Here, the left parking space has no sign at all, and the right parking space has a sign that measures only thirty-one inches high, which is just over half of the required height under the Standards. Thus, these spaces violate the 2010 Standards.

4.20    The image below depicts the second pair of designated accessible parking spaces inside the underground level of the parking garage.



4.21    The 2010 ADA Standards require that accessible parking spaces and access aisles serving them have slopes no steeper than a height change of one inch per forty-eight inches of linear distance, or about a 2.08% grade.[21] Under the 1991 Standards, the maximum permissible

---

[21] U.S. Dept. of Just., 2010 ADA Standards for Accessible Design §§ 302, 502.4, (Sept. 15, 2010), https://archive.ada.gov/regs2010/2010ADAStandards/2010ADAStandards.pdf.

Complaint for Declaratory and Injunctive Relief - 8

WASHINGTON CIVIL & DISABILITY ADVOCATE
4115 Roosevelt Way NE, Suite B
Seattle, WA 98105
(206) 428-3172

slope is a height change of one inch per fifty inches of linear distance, or about a two percent grade.[22]

4.22   Here, the slopes of the parking spaces and shared access aisle have running slopes with grades that measure above 2.08%, including slopes that measure over 3.5% on a few areas. Thus, the slopes also fail to comply with the 2010 and 1991 Standards.

4.23   Under the 2010 and 1991 Standards, owners, operators, and lessors of places of public accommodation must provide an exterior route of at least thirty-six inches wide that connects the access aisle and the shortest accessible route to the accessible entrance of the place of public accommodation.[23]

4.24   Here, RSR fails to provide any exterior route that clearly marks the shortest exterior route between the shared access aisle and the accessible entrance of the Property. This also violates the 2010 and 1991 Standards.

4.25   Under both the 2010 and 1991 Standards, a facility must allow a minimum vertical clearance of ninety-eight inches at "van accessible" designated spaces and along at least one vehicle access route to such spaces from site entrances and exits.[24]

---

[22] U.S. Dept. of Just., Excerpt from 28 CFR Part 36: ADA Standards for Accessible Design § 4.6.3 (last updated July 1, 1994), https://www.ada.gov/assets/pdfs/1991-design-standards.pdf.

[23] U.S. Dept. of Just., 2010 ADA Standards for Accessible Design §§ 403.5.1; 208.3.1. (Sept. 15, 2010), https://archive.ada.gov/regs2010/2010ADAStandards/2010ADAStandards.pdf; see U.S. Dept. of Just., Excerpt from 28 CFR Part 36: ADA Standards for Accessible Design §§ 4.3.3, 4.6.2, (last updated July 1, 1994), https://www.ada.gov/assets/pdfs/1991-design-standards.pdf.

[24] U.S. Dept. of Just., 2010 ADA Standards for Accessible Design § 502.5, (Sept. 15, 2010), https://archive.ada.gov/regs2010/2010ADAStandards/2010ADAStandards.pdf; U.S. Dept. of Just., Excerpt from 28 CFR Part 36: ADA Standards for Accessible Design § 4.6.5 (last updated July 1, 1994), https://www.ada.gov/assets/pdfs/1991-design-standards.pdf.

4.26  Here, RSR provides a vertical clearance of eighty-four inches (about seven feet), yet provides a designated van accessible parking space. Thus, the height of the underground parking facility also fails to comply with the applicable Standards.

**Accessibility Barriers at the Overground Level of RSR's Parking Garage**

4.27  In addition to an underground parking garage, RSR also provides parking on the upper level of the parking garage.

4.28  On information and belief, RSR provides a total of seventy-eight total parking spaces on the upper level, four of which are designated accessible parking spaces.

4.29  The 2010 ADA Standards, where applicable, require that one in every six (or fraction of six) accessible spaces be designated as "van accessible" on the parking space identification sign.[25] Under the 1991 ADA Standards, at least one in every eight accessible spaces shall be served by an access aisle ninety-six inches wide at minimum and a sign shall designate the space "Van Accessible."[26]

4.30  Here, none of the four designated accessible spaces are marked as "Van Accessible." Thus, this complete lack of designated "Van Accessible" spaces violate the 2010 and 1991 Standards.

**Surface-Level Overflow Lot**

4.31  In addition to the parking spaces provided underground and overground, RSR also operates a street-level parking lot located across the street from the Roosevelt location of Whole Foods Market.

---

[25] U.S. Dept. of Just., 2010 ADA Standards for Accessible Design §§ 208.2.4, 502.6, (Sept. 15, 2010), https://archive.ada.gov/regs2010/2010ADAStandards/2010ADAStandards.pdf.
[26] U.S. Dept. of Just., Excerpt from 28 CFR Part 36: ADA Standards for Accessible Design § 4.6.4 (last updated July 1, 1994), https://www.ada.gov/assets/pdfs/1991-design-standards.pdf.

4.32     On information and belief, this parking facility contains eighty total parking spaces, four of which are designated as accessible.

4.33     As stated previously, the 2010 ADA Standards necessitate one in every six or fraction of six accessible spaces to be designated as "Van Accessible" on the parking space identification sign.[27] Per the 1991 ADA Standards, one in every eight accessible spaces, but not less than one, shall be served by an access aisle at least ninety-six inches wide and be designated as "Van Accessible" on the sign designating the space.[28]

4.34     Here, none of the designated accessible spaces are marked as "Van Accessible." Thus, this complete lack of designated "Van Accessible" spaces violates the 2010 and 1991 Standards.

4.35     The 2010 ADA Standards require that accessible parking spaces and access aisles serving them have slopes no steeper than a height change of one inch per forty-eight inches of linear distance, or about a 2.08% grade.[29] Under the 1991 Standards, the maximum permissible slope is a height change of one inch per fifty inches of linear distance, or about a two percent grade.[30]

4.36     Here, on information and belief, the slopes of the parking spaces and shared access aisle have running slopes with grades that measure above 2.08%, including slopes that measure

---

[27] U.S. Dept. of Just., 2010 ADA Standards for Accessible Design §§ 208.2.4, 502.6, (Sept. 15, 2010), https://archive.ada.gov/regs2010/2010ADAStandards/2010ADAStandards.pdf.
[28] U.S. Dept. of Just., Excerpt from 28 CFR Part 36: ADA Standards for Accessible Design § 4.6.4 (last updated July 1, 1994), https://www.ada.gov/assets/pdfs/1991-design-standards.pdf.
[29] U.S. Dept. of Just., 2010 ADA Standards for Accessible Design §§ 302, 502.4, (Sept. 15, 2010), https://archive.ada.gov/regs2010/2010ADAStandards/2010ADAStandards.pdf.
[30] U.S. Dept. of Just., Excerpt from 28 CFR Part 36: ADA Standards for Accessible Design § 4.6.3 (last updated July 1, 1994), https://www.ada.gov/assets/pdfs/1991-design-standards.pdf.

over three percent in spots at the front of the designated accessible spaces. Thus, the slopes also fail to comply with the 2010 and 1991 Standards.

**Plaintiff's Attempts to Settle**

4.37    On March 18, 2025, counsel for Mr. Long sent a letter to RSR to request a meeting with counsel for RSR to discuss these accessibility barriers and potential early resolution.

4.38    On March 25, 2025, RSR acknowledged receipt of the Plaintiff's letter via certified mail return receipt.

4.39    On April 3, 2025, counsel for Mr. Long and counsel for RSR agreed over email to meet virtually.

4.40    On April 7, 2025, counsel for Mr. Long met with counsel for RSR over Zoom to discuss the accessibility barriers and prospectively resolve this case without resorting to litigation.

4.41    On April 10, 2025, counsel for Mr. Long sent a preliminary draft of the settlement agreement and requested feedback from counsel for RSR.

4.42    Counsel for RSR acknowledged receipt via email later that day.

4.43    After several follow-up messages spanning several weeks from counsel for Mr. Long, counsel for RSR reported via email to plaintiff's counsel on June 4, 2025, that a consultant from the consulting firm Endelman & Associates inspected the Property.

4.44    Since that update, counsel for Mr. Long has followed up several more times for any further updates, including via emails on June 17, June 24, July 2, July 16, July 31, and August 11.

4.45    While counsel for RSR has replied to plaintiff's counsel in each of these communications, RSR's counsel failed to provide feedback on the drafted settlement agreement, let alone report any substantive progress on alterations.

Complaint for Declaratory and Injunctive
Relief - 12

WASHINGTON CIVIL & DISABILITY ADVOCATE
4115 Roosevelt Way NE, Suite B
Seattle, WA 98105
(206) 428-3172

4.46    Considering the lack of substantive action at this point, now over four months from the initial drafting and confirmation of receipt of the demand letter, plaintiff is left with no choice but to file this action to enforce his rights under the ADA and WLAD.

## V.    CAUSES OF ACTION

A.  **Count I: Title III of the Americans with Disabilities Act of 1990, Prohibited Discrimination by Failing to Ensure Full and Equal Enjoyment of the Place of Public Accommodation, 42 U.S.C. § 12182(a)**

5.1    Mr. Long incorporates by reference the prior paragraphs herein.

5.2    Mr. Long is a qualified individual with a disability as defined under the ADA.

5.3    Mr. Long's disability "substantially limits" the major life activities of walking and standing.[31]

5.4    Title III of the ADA provides that "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."[32]

5.5    Here, RSR owns or operates Roosevelt Square, a building that provides services to the public. Thus, RSR owns and/or operates a place of public accommodation subject to the obligations under ADA Title III.

5.6    By failing to fulfill obligations under ADA Title III, RSR has discriminated against Mr. Long based on his disability, directly violating the ADA.

5.7    To date, RSR has failed to remediate architectural barriers that violate the ADA. This failure will foreseeably abridge Mr. Long's rights to "full and equal enjoyment" of Roosevelt

---

[31] 42 U.S.C. § 12102(2)(A).
[32] 42 U.S.C. § 12182(a).

Square in the future. Without declaratory and injunctive relief, RSR will continue to discriminate against Mr. Long as alleged in this Complaint.

5.8    Mr. Long is entitled under the ADA to declaratory and injunctive relief, along with reasonable costs and attorneys' fees.[33]

### B. Count II: Title III of the Americans with Disabilities Act of 1990, Prohibited Discrimination by Failing to Remove Architectural Barriers in Existing Facilities, 42 U.S.C. § 12182(b)(2)(A)(iv)

5.9    Mr. Long incorporates by reference the prior paragraphs herein.

5.10    According to the ADA, a covered place of public accommodation discriminates by failing to remove architectural barriers that are structural in nature and readily achievable.[34] Even if a place of public accommodation correctly deems one method of removing these architectural barriers as not readily achievable, a place of public accommodation still discriminates by failing to use alternative methods that are readily achievable.[35]

5.11    Here, the architectural barriers are structural: parking spaces that do not fully comply with the mandatory requirements under the applicable Standards. Counsel for Mr. Long notified RSR of its accessibility barriers by sending the demand letter on March 18 and receiving confirmation of receipt from RSR on March 25. Yet, RSR has still failed to remove these architectural barriers. This failure is grounds for discrimination under the ADA and subjects Mr. Long to declaratory and injunctive relief.

### C. Count II: Title III of the Americans with Disabilities Act of 1990, Prohibited Discrimination by Failing to Make Reasonable Modifications in Policies, Practices, or Procedures, 42 U.S.C. § 12182(b)(2)(A)(ii)

5.12    Mr. Long incorporates by reference the prior paragraphs herein.

---

[33] 42 U.S.C. §§ 12188, 12205.
[34] 42 U.S.C. § 12182(b)(2)(A)(iv).
[35] 42 U.S.C. § 12182(b)(2)(A)(iv).

5.13    A place of public accommodation also discriminates against people with disabilities by failing to reasonably modify policies, practices, or procedures to ensure equal access for individuals with disabilities.[36] A place of public accommodation may relieve itself of this obligation by providing that the reasonable modification would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation.[37]

5.14    Here, as a place of public accommodation, RSR has failed to reasonably modify its practice of providing designated accessible parking spaces to ensure equal access. As stated earlier, counsel for Mr. Long put RSR on notice of its statutory obligation to fix these accessibility barriers. Yet, RSR has failed to take any substantive action to date. Mr. Long is entitled to declaratory and injunctive relief under the ADA.

**D. Count IV: Washington Law Against Discrimination, Freedom from Discrimination – Right to Full Enjoyment of Facilities of a Place of Public Resort or Accommodation, Revised Code of Washington, §§ 49.60.010-49.60.505**

5.15    Mr. Long incorporates by reference the prior paragraphs herein.

5.16    Mr. Long has a disability as defined under WLAD.[38]

5.17    Under Washington State law, people with disabilities are entitled to "[t]he right to be free from discrimination because of…the presence of any sensory, mental, or physical disability."[39] This is statutorily recognized and declared as civil right.[40] This right includes: "… (b) The right to the full enjoyment of any of the accommodations, advantages, facilities, or privileges of any place of public resort, accommodation, assemblage, or amusement."

---

[36] 42 U.S.C. § 12182(b)(2)(A)(ii).
[37] Id.
[38] WASH. REV. CODE § 49.60.040(7).
[39] WASH. REV. CODE § 49.60.030(1).
[40] Id.

Complaint for Declaratory and Injunctive Relief - 15

WASHINGTON CIVIL & DISABILITY ADVOCATE
4115 Roosevelt Way NE, Suite B
Seattle, WA 98105
(206) 428-3172

5.18    Roosevelt Square, owned or operated by RSR, is a "place of public resort, accommodation, assemblage, or amusement" within the meaning of WLAD.[41]

5.19    RSR has violated sections 49.60.010 *et seq.* of the Revised Code of Washington by unlawfully denying Mr. Long the full and equal access to Roosevelt Square as mandated by the ADA.

5.20    Incorporating his stated allegations, Mr. Long contends that RSR denies Mr. Long the right to "full and equal enjoyment" of public parking and other publicly available goods, services, and benefits at Roosevelt.[42] On these grounds, RSR discriminates against Mr. Long based on disability and thus violates WLAD.[43]

5.21    Mr. Long has a clear legal right to access RSR's Property as a place of public accommodation. When a defendant violates a plaintiff's legal rights, and the plaintiff experiences injury as a result, courts may appropriately grant declaratory and injunctive relief.[44]

5.22    Mr. Long's request for injunctive relief is prospective. He also intends to protect his rights, and the rights of others similarly situated who may also want to patronize this Property.

5.23    Mr. Long is entitled to declaratory and injunctive relief and to recover reasonable attorneys' fees and costs incurred in bringing this action against RSR, pursuant to RCW § 49.60.030(2).

## VI.    PRAYER FOR RELIEF

WHEREFORE, Mr. Long prays for the following relief:

---

[41] Id. § 49.60.040(2).
[42] WASH. REV. CODE § 49.60.030(1)(b) (declaring that "[t]he right be free from discrimination because of . . . disability" is a civil right, including "[t]he right to the full enjoyment of any of the accommodations, advantages, facilities, or privileges of any place of public resort, accommodation, assemblage, or amusement").
[43] WASH. REV. CODE § 49.60.010 et seq.
[44] See, e.g., Martini v. Boeing Co., 137 Wn.2d 357, 374 (1999); Wash. State Commc'n Access Project v. Regal Cinemas, Inc., 173 Wn. App. 174, 213 (2013).

1     6.1     That this Court assumes jurisdiction;

2     6.2     A declaration that RSR's actions and inactions violated Mr. Long's civil rights

3  under the ADA and WLAD;

4     6.3     That this Court issue declaratory and injunctive relief ordering RSR to bring

5  Roosevelt Square into compliance with, and to operate Roosevelt Square in compliance with, the

6  Americans with Disabilities Act, pursuant to 42 U.S.C. § 12205, and the WLAD;

7     6.4     Judgment against RSR for compensatory damages in an amount to be proven at

8  trial;

9     6.5     That this Court award reasonable attorneys' fees and costs to Mr. Long, pursuant

10  to 42 U.S.C. § 12205, and RCW 49.60.030(2);

11    6.6     That this Court awards such additional or alternative relief as may be just, proper,

12  and equitable; and

13    6.7     The right to conform the pleadings to the evidence presented.

15  RESPECTFULLY SUBMITTED this 20th day of August, 2025.

WASHINGTON CIVIL & DISABILITY ADVOCATE

| /s/ *Conrad Reynoldson* | /s/ *Dustine Bowker* |
|---|---|
| Conrad Reynoldson, WSBA #48187 | Dustine Bowker, WSBA #63263 |
| 4115 Roosevelt Way NE, Suite B | 4115 Roosevelt Way NE, Suite B |
| Seattle, WA 98105 | Seattle, WA 98105 |
| (206) 876-8515 | (206) 428-3172 |
| conrad@wacda.com | dustine@wacda.com |

*Attorneys for Plaintiff*